IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

BERNIE'S PHARMACY, INC.,
an Alaskan Corporation,

                          Plaintiff,

           v.

AMERISOURCEBERGEN
DRUG CORPORATION, a
Delaware Corporation,

                          Defendant.

Case No. 3:18-cv-00183-TMB

ORDER ON MOTION
TO DISMISS (DKT. 62);
MOTION FOR ATTORNEYS'
FEES (DKT. 75)

## I. INTRODUCTION

This matter comes before the Court on the Motion to Dismiss by Defendant AmerisourceBergen Drug Corporation ("ABDC")[1] and the Motion for Attorneys' Fees by Plaintiff' Bernie's Pharmacy, Inc. ("Bernie's").[2] Following the Court's entry of a preliminary injunction in the parties' contractual dispute,[3] ABDC moved to dismiss Plaintiff's Complaint "in its entirety," asserting that "in light of the preliminary injunction entered by the Court, those claims are now moot,"[4] which Bernie's opposed.[5] The Motion to Dismiss was fully briefed before the November 30, 2018 expiration of the contract and the preliminary injunction;[6] the Court

---

[1] Dkt. 62.

[2] Dkt. 75.

[3] Dkt. 51 at 20–21.

[4] Dkt. 62 at 1–2.

[5] Dkt. 66.

[6] *See* Dkt. 51 at 20–21 (Order entering preliminary injunction through the end of the parties' Prime Vendor Agreement on November 30, 2018). ABDC's Motion to Dismiss was filed on

1

subsequently requested supplemental briefing as to whether that expiration mooted the case.[7] Concurrent with the supplemental briefing, Bernie's filed a Motion for Attorneys' Fees,[8] which ABDC opposed.[9] Both motions have now been fully briefed,[10] and oral argument was not requested nor does the Court find it would be helpful.

For the following reasons, ABDC's Motion to Dismiss at docket 62 is **GRANTED**, and Bernie's Motion for Attorneys' Fees at docket 75 is **GRANTED.**

## II.  BACKGROUND

Beginning December 1, 2015, Bernie's and ABDC were parties to a Prime Vendor Agreement ("PVA"), under which ABDC supplied prescription medications to Bernie's, a local pharmacy located in Anchorage, Alaska.[11] In late May 2018, a dispute arose between the parties regarding ABDC's supply of opioid products to Bernie's,[12] which culminated in ABDC communicating to Bernie's its intent to terminate the supply of those prescription medications to Bernie's in August 2018.[13] Bernie's initiated the present action shortly thereafter, asserting that

---

September 28, 2018. *See* Dkt. 62. Bernie's Response was filed November 2, 2018, and ABDC filed a Reply on November 16, 2018. Dkt. 66 (Response); Dkt. 69 (Reply).

[7] Dkt. 70 (Order); Dkt. 72 (Supplemental brief by Bernie's Opposing Motion to Dismiss); Dkt. 74 (Supplemental Brief by ABDC in Support of Motion to Dismiss).

[8] Dkt. 75.

[9] Dkt. 76.

[10] Dkt. 62 (Motion to Dismiss); Dkt.66 (Response); Dkt. 69 (Reply); Dkt. 70 (Order requesting Supplemental briefing); Dkt. 72 (Supplemental brief in opposition); Dkt. 74 (supplemental brief in support). Bernie's Motion for Attorneys' Fees was briefed concurrently with the supplemental briefing. *See* Dkt. 75 (Motion for Attorneys' Fees); Dkt. 76 (Opposition); Dkt. 77 (Reply).

[11] Dkt. 1-1 at 1.

[12] Dkt. 1-4 at 1.

[13] *See* Dkts. 1-2, 1-3.

2

ABDC acted outside its authority under the PVA.[14] Bernie's Complaint advanced five counts against ABDC: declaratory judgment, breach of contract, breach of the implied duty of good faith and fair dealing, tortious interference, and injunctive relief.[15] Bernie's requested a declaration of rights and duties under the PVA, and asked that the Court enjoin ABDC from terminating Bernie's supply under the PVA.[16] Bernie's also sought "damages suffered, including but not limited to lost profits."[17]

Shortly after filing the Complaint, Bernie's moved for the entry of a temporary restraining order and preliminary injunction, which ABDC opposed.[18] On August 24, 2018, following briefing and oral argument,[19] the Court entered a preliminary injunction requiring ABDC to continue supplying Bernie's through the expiration of the PVA on November 30, 2018.[20] The Court assumes the parties' familiarity with that Order, and hereby reincorporates the background facts and analysis found therein here.[21]

At the Court's direction, the parties' filed a Joint Status Report on September 7, 2018 and requested an order regarding the initial scheduling and planning for the case.[22] Then, on September

---

[14] Dkt. 1 at 15–16.

[15] *Id.* at 10–15, 20–21.

[16] *Id.* at 15.

[17] *Id.*

[18] Dkt. 3 (Motion for Injunctive Relief); Dkt. 27 (Response); Dkt. 31 (Reply).

[19] Dkt. 53 (Oral Argument); Dkt. 59 (Transcript of Oral Argument).

[20] Dkt. 51 at 20–21.

[21] *Id.*

[22] Dkt. 58 at 1–2.

3

28, 2018, ABDC filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), asserting that Bernie's claims were moot, and that no live controversy remained between the parties.[23] Bernie's opposed the motion, contending the claims remained live, but also acknowledged that "it is possible that the case may become moot after November 30."[24] Following that date—and the expiration of the PVA and preliminary injunction—the Court requested supplemental briefing on certain outstanding issues, which the parties filed in January 2019.[25]

Ultimately, the parties' supplemental briefing and subsequent motion practice makes clear that the questions remaining for the Court to resolve center around the issues of damages and attorneys' fees. In opposing the Motion to Dismiss, Bernie's supplemental briefing identifies as damages only the fees and costs incurred in prosecuting this action and enforcing the PVA through its expiration.[26] ABDC maintains that all claims are now moot, as no breach of the PVA ever occurred, and argues that Bernie's cannot identify any damages suffered.[27]

After the parties completed supplemental briefing on the Motion to Dismiss, Bernie's filed a Motion for Attorneys' Fees, asserting it is entitled to recovery of attorneys' fees under the terms of the PVA.[28] In pertinent part, Section 11(b) of the PVA states as follows:

> "The prevailing party in any legal action, including a bankruptcy action, may recover all reasonable attorneys' fees. A waiver or delay in enforcing this PVA will not deprive a party of its right to act later or due to another breach. This PVA is

---

[23] Dkt. 62 at 2, 5–8. ABDC also argued, in the alternative, for dismissal under Fed. R. Civ. P. 12(b)(6). *See id.* at 8–9; 10–11.

[24] Dkt. 66 at 3. ABDC subsequently filed a reply at docket 69.

[25] Dkt. 70 (Order); Dkt. 72 (Bernie's Supplemental Brief); Dkt. 74 (ABDC Supplemental Brief).

[26] Dkt. 72 at 6, 10.

[27] Dkt. 74 at 2–3.

[28] Dkt. 75 at 1.

4

governed by Pennsylvania law; supersedes prior agreements regarding this arrangement, other than ABDC's credit terms; and cannot be amended unless each party agrees in writing."[29]

Bernie's argues that under Alaska law—which Bernie's contends should apply to the interpretation of the fee-shifting clause—it is the prevailing party, and is entitled to recover attorneys' fees from ABDC.[30] ABDC opposes the Motion for Attorneys' Fees, arguing that Bernie's success at the preliminary injunction stage is insufficient for a finding that Bernie's is the "prevailing party" such that they are entitled to recover attorneys' fees.[31] Central to ABDC's argument is the contention that Pennsylvania law, rather than Alaska law, should be applied to interpret the PVA's fee-shifting clause.[32] ABDC argues, in the alternative, that any recovery of attorneys' fees by Bernie's should be limited to the amount provided for under Alaska R. Civ. P. 82(b)(2).[33]

Both the Motion to Dismiss and Motion for Attorneys' Fees are now under advisement with the Court, and ripe for resolution.

### III. LEGAL STANDARD

*A. Mootness*

It is well established that "'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'"[34] For a federal court to retain jurisdiction,

---

[29] Dkt. 1-1 at 2.

[30] *Id*. at 1–2.

[31] Dkt. 76.

[32] *Id*. at 3 (arguing that "the prevailing party provision of the PVA is explicitly governed by, and therefore must be interpreted under, Pennsylvania law").

[33] *Id*. at 7.

[34] *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

"[a]n actual controversy must exist at all stages of the litigation."[35] "'[W]hen the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome,'"[36] a case becomes moot; and, "[f]ederal courts lack jurisdiction to decide moot cases."[37] Thus,

> "jurisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completed and irrevocably eradicated the effects of the alleged violation."[38]

When both conditions are met, "the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law."[39]

Ultimately, to determine if a case is moot, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be *any* effective relief."[40] "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."[41]

---

[35] *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002).

[36] *Hellerstein v. Desert Lifestyles, LLC*, 686 F. App'x 530, 531 (9th Cir. 2017) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

[37] *ConocoPhillips Alaska, Inc. v. Nat'l Marine Fisheries*, No. 3:06-CV-0198-RRB, 2006 WL 8438534, at *1 (D. Alaska Dec. 29, 2006).

[38] *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (internal quotations and punctuation omitted).

[39] *Id*.

[40] *NW Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988).

[41] *Knox v. Serv. Employees Intern. Union, Local 1000*, 567 U.S. 298, 307–08 (2012).

*B. Attorneys' Fees*

A determination of the applicable law under choice of law rules is necessary where, as here, a federal court sits in diversity jurisdiction.[42] "The Supreme Court held in *Alyeska Pipeline Service Co. v. Wilderness Society* that for *Erie Railroad Co. v. Tompkins* purposes, state law on attorneys' fees is substantive, so state law applies in diversity cases."[43] Thus, the issue of attorneys' fees is governed by state law. This is particularly true where, as here, the state law on attorneys' fees "reflects a substantial policy of the state."[44]

To determine which state's law applies, a federal court looks to the forum state's choice of law rules.[45] Alaska courts "look to the Restatement (Second) of Conflict of Laws for guidance in resolving choice-of-law issues."[46] "The Second Restatement requires a separate choice-of-law analysis for each issue presented[,]" and Alaska "likewise follow[s] this rule of dépeçage."[47] Accordingly, while the Court has already found that the substantive provisions of the PVA are

---

[42] *See* Dkt. 1 at 4 ("This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.").

[43] *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 973 (9th Cir. 2013) (citing generally *Alyeska Pipeline*, 421 U.S. 240 (1975) and *Erie*, 304 U.S. 64 (1938) (internal punctuation omitted)).

[44] *Alyeska Pipeline*, 420 U.S. at 259. Alaska's approach to attorneys' fees is indeed unique among the states, as "Alaska courts generally award partial attorney's fees to the prevailing party in a civil case[.]" *State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 394 (Alaska 2007).

[45] *Alaska Rent-A-Car*, 738 F.3d at 973 ("The rule is that the federal court in which the case is litigated should apply the forum state's choice of law rules."). *See also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, No. 3:03-CV-00029-TMB, 2010 WL 11474830, at *2 (D. Alaska June 15, 2010), *aff'd in part and remanded,* 738 F.3d 960 (9th Cir. 2013) (applying the choice of law rules of Alaska as the forum state).

[46] *Savage Arms, Inc. v. W. Auto Supply Co.*, 18 P.3d 49, 53 (Alaska 2001).

[47] *Id*.

7

governed by Pennsylvania law pursuant to provision 11(b) of the PVA,[48] the Court here must determine the proper choice of law on the question of attorneys' fees "without regard to other issues in the case."[49]

Under Alaska choice of law rules, and again following the approach from the Second Restatement, the question comes down to whether Alaska courts characterize Alaska law governing attorneys' fees as substantive or procedural.[50] The Ninth Circuit has held that, for choice of law purposes, where "the Alaska Supreme Court would consider its attorney's fees rule procedural, then Alaska law, the English rule, would apply."[51]

## IV. ANALYSIS

The motions presently before the Court raise two related—but separate—issues: first, whether the contractual dispute between the parties is now moot; and second, which party—if any—is entitled to attorneys' fees. For the reasons discussed below, the Court finds that the controversy between the parties is moot and that dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate, as the only remaining question is the award of attorneys' fees. The Court further finds that Alaska law is appropriately applied to interpret the fee-shifting clause found in Section 11(b) of the PVA, and that, under that clause, an award of reasonable attorneys' fees to Bernie's as the prevailing party is appropriate. The Court discusses each issue in turn below.

---

[48] Dkt. 51 at 9.

[49] *Savage Arms*, 18 P.3d at 53.

[50] *See Alaska Rent-A-Car*, 738 F.3d at 973–974 ("Though federal law establishes that attorney's fees is substantive for *Erie* purposes, it is not necessarily substantive for choice of law purposes."). *See also* Restatement (Second) of Conflict of Laws § 122 ("A court usually applies its own local law rules prescribing how litigation shall be conducted, even when it applies the local law rules of another state to resolve other issues in the case.").

[51] *Alaska Rent-A-Car*, 738 F.3d at 973.

8

*A. Motion to Dismiss*

ABDC moves for dismissal of all Bernie's claims as moot, contending "there is no controversy, at present, between the parties."[52] In responding to the Motion to Dismiss, Bernie's initially advanced numerous arguments as to why the dispute was ongoing.[53] In Bernie's supplemental briefing—entered after the expiration of the Court's preliminary injunction and the PVA—Bernie's primarily asserts that the claims at issue are not mooted because the question of damages remains unresolved.[54] ABDC maintains that the case is now moot, notwithstanding the issue of whether either party is entitled to attorneys' fees, as no live controversy remains on the merits of any claims.[55]

As an initial matter, the Court finds that Counts I and V of the Complaint are plainly mooted by the expiration of the PVA. Count I, which sought declaratory relief from the court, requested "that this Court declare the parties' rights and obligations pursuant to the PVA, including Defendant's obligation to supply certain pharmaceutical products to Bernie's through November 30, 2018."[56] That deadline is now past, and the PVA has expired. Likewise, Count V of the

---

[52] Dkt. 62 at 2.

[53] Bernie's specifically alleged, *inter alia*, that it suffered lasting damages from ABDC's actions, including the loss of employees and reputational harm; Bernie's further argued that the case could not be mooted until the expiration of the PVA on November 30, 2018. *See* Dkt. 66 at 9 (describing "the damage already caused by [ABDC's] anticipatory repudiation, including but not limited to lost staff who found other work when ABDC threatened to put Bernie's out of business"); *id.* at 2–3 ("If the lawsuit is dismissed now, as ABDC insists . . . the preliminary injunction [will] be dissolved and the parties [will be] right back where they started—with Bernie's at immediate risk of ABDC terminating the supply of controlled substances before November 30, 2018 . . . .").

[54] Dkt. 72 at 12.

[55] Dkt. 74 at 2–3.

[56] Dkt. 1 at 10–11.

Complaint sought injunctive relief "to be made permanent on final judgment prohibiting [ABDC] from refusing to provide pharmaceuticals pursuant to the terms of the PVA." [57] But no further obligations remain under that agreement, which has ended. The Court finds no further relief that can be afforded on either of these counts; accordingly, both are properly dismissed as moot.

Three claims remain at issue: Count II for breach of contract, Count III for breach of the implied covenant of good faith and fair dealing, and Count IV for tortious interference.[58] Entry of a preliminary injunction or declaratory relief does not uniformly moot a contractual dispute as to remaining claims for money damages.[59] Rather, the question of mootness ultimately turns on whether Bernie's can demonstrate some grounds on which it may be entitled to relief from this Court for its claims.[60] Here, the Court looks to Pennsylvania law—which governs the substantive provisions of the PVA—to determine whether any relief is available such that a live controversy exists.[61] It is undisputed by the parties that, due to the entry of the Court's preliminary injunction, ABDC continued performance under the PVA through its termination date on November 30, 2018.[62] It is further undisputed that the contractual obligations between Bernie's and ABDC have

---

[57] *Id*. at 14–15. This Count is erroneously labeled as Count IV in the Complaint.

[58] Dkt. 1 at 11–14.

[59] *See, e.g., Z. Channel Ltd. P'ship v. Home Box Office, Inc.*, 931 F.2d 1338 (9th Cir. 1991).

[60] Bernie's supplemental briefing on mootness addressed on Counts II and III, for breach of contract and breach of the implied covenant of good faith and fair dealing, which were the focus of the Court's Order requesting supplemental briefing. Because Bernie's has not explicitly withdrawn Count IV, for tortious interference, the Court must presume that Bernie's position is the same as it was in prior briefing and that Bernie's is continuing to argue that this claim is not mooted. Accordingly, the remainder of this analysis addresses the three claims remaining from the Complaint that sought damages; the Court already addressed the claims for equitable relief above.

[61] *See* Dkt. 51 at 9 ("Both parties agree that the PVA is governed by Pennsylvania law").

[62] *See* Dkt. 74 at 3 ("Nor is there any allegation that ABDC failed to supply Bernie's with controlled substances at any time until the PVA expired at the end of November 2018."); Dkt. 72

10

ended, and the PVA is no longer in force. No further questions remain for this Court to resolve regarding the parties' obligations under that contract.

Bernie's maintains that the dispute remains live because it "incurred significant financial damages arising from ABDC's breaches of the PVA . . . namely, attorney's fees and costs incurred to defend against ABDC's misconduct."[63] Bernie's argues that ABDC breached the contract by "anticipatory repudiation," asserting that "ABDC's repeated statements leave no doubt that ABDC was unequivocally rejecting its continuing obligation to supply pharmaceuticals to Bernie's."[64] This argument falls short. While ABDC may have communicated that intention to Bernie's, leading to the present litigation, no facts here suggest that any breach of the PVA actually occurred.

Furthermore, and more critically, under Pennsylvania law, Bernie's cannot show that it is entitled to additional relief in the form of money damages. The only damages Bernie's identifies are the attorneys' fees and costs incurred in maintaining this suit.[65] Bernie's does not identify any other damages suffered as a result of ABDC's actions.[66] Yet Bernie's points to no authority

---

at 6 (acknowledging that "Bernie's . . . prevailed on its request for the [preliminary injunction] and obtaining the delivery of pharmaceuticals through November 30").

[63] Dkt. 72 at 6.

[64] *Id.*

[65] *See id.* at 6–7, 10.

[66] In opposing the Motion to Dismiss, Bernie's initially asserted other potential areas of damage, asserting, *inter alia*, that additional damages might be incurred if Bernie's was unable to find a replacement supplier to take over after the expiration of the PVA. *See* Dkt. 66 at 9–10. Bernie's supplemental briefing, however, states that "Bernie's incurred significant financial damages arising from ABDC's breaches of the PVA . . . namely, attorney's fees and costs incurred" in litigating the present action. Dkt. 72 at 6–7. Bernie's makes no mention of any other damages coming to fruition after the expiration of the PVA and this Court's preliminary injunction; accordingly, in addressing the question of mootness, the Court construes Bernie's position as asserting only attorneys' fees and costs as damages.

suggesting that Pennsylvania law allows for the award of attorneys' fees as a form of damages for any of the remaining claims. To the contrary, the applicable law suggests that Pennsylvania law generally treats the issue of attorneys' fees as separate from any award of damage on the merits of a claim.[67] No further relief is available on Bernie's claims, and thus, those claims are moot.[68]

Accordingly, ABDC's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is **GRANTED**, and all remaining claims are dismissed as moot.

*B. Motion for Attorneys' Fees*

Bernie's now moves for attorneys' fees, requesting "an order from this Court confirming that Bernie's is the 'prevailing party' in this action and is entitled to recover its costs, including reasonable attorneys' fees, pursuant to Section 11(b) of the [PVA]."[69] In support of this argument, Bernie's asserts that "Alaska law applies to procedural issues including the availability of attorneys' fees," and that Bernie's is the prevailing party under Alaska law because Bernie's "obtained relief on its injunction request that was the primary purpose of the litigation."[70] In so

---

[67] *See, e.g.*, *Behrend v. Yellow Cab Co.*, 271 A.2d 241, 243 (Pa. 1970) ("As such, it might provide a basis for a claim by appellant for attorney's fees owed him pursuant to the power of attorney, but it does not support a claim in tort for damages, punitive or otherwise."); *Cresci Const. Servs., Inc. v. Martin*, 64 A.3d 254, 257 (Pa. Super. Ct. 2013) (attorney's fees motion filed as a post-trial motion); *Serota v. London-Towne Homeowners Ass'n*, No. 1451 C.D. 2017, 2018 WL 6005540, at *7 (Pa. Commw. Ct. Nov. 16, 2018) ("Attorneys' fees are not actual damages"). Bernie's cites no authority suggesting that the present circumstances are somehow distinguishable such that the Court could properly treat attorney's fees or costs as actual damages.

[68] Furthermore, "It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445 (2016). To the extent that Bernie's identifies no breach that actually occurred, and no resulting damages, no relief is available.

[69] Dkt. 75 at 1–2.

[70] *Id.* at 2.

12

arguing, Bernie's urges the Court to enforce the fee shifting provision from Section 11(b) of the PVA, but also argues the Court must interpret that clause—and specifically the term 'prevailing party' found therein—under Alaska law, notwithstanding the choice of law provision in the PVA.[71] Bernie's argument thus hinges on its contention that Alaska choice of law rules and Alaska's substantive law mandate such a result.

In response, ABDC argues that "a choice-of-law analysis is not necessary where, as here, a choice-of-law provision exists in a contract."[72] ABDC argues that "the prevailing party provision of the PVA is explicitly governed by, and therefore must be interpreted under, Pennsylvania law."[73] ABDC then argues that, under Pennsylvania law, "success at the preliminary injunction stage does not constitute a final victory in the case" such that a party that obtains injunctive relief is entitled to attorneys' fees.[74] As a result, ABDC asserts that "because Bernie's cannot be considered a prevailing party under Pennsylvania law, it cannot be considered a prevailing party under the PVA."[75]

ABDC further contends, in the alternative, that even under Alaska law, Bernie's is not entitled to the relief it seeks—that is, an order awarding full reasonable costs and fees—because:

---

[71] *Id*. at 6–7 ("The Restatement [(Second) of Conflict of Laws] directs states like Alaska to apply their own rules 'prescribing how litigation shall be conducted,' even when another state's laws govern the substantive issues in the case. This is true whether or not there is a choice of law provision in the relevant contract setting forth the substantive law that governs the agreement." (internal citations omitted)).

[72] Dkt. 76 at 3. ABDC also argues that the PVA displaces any application of Alaska R. Civ. P. 82, as the parties agreed to a contractually different arrangement as authorized by Rule 82(a). *Id*. at 4.

[73] *Id*. at 3.

[74] *Id*. at 5.

[75] *Id.*

13

(1) even under Alaska law, Bernie's cannot be considered the prevailing party;[76] and (2) even if Bernie's is found to be the prevailing party under Alaska law, Bernie's is entitled to only twenty percent of its reasonable actual attorneys' fees under Alaska R. Civ. P. 82, because Bernie's was awarded no money judgment and the case was resolved without trial.[77]

1. Whether Alaska or Pennsylvania Law Applies to the Issue of Attorneys' Fees

The first issue the Court must address is the choice of law that governs the award of attorneys' fees. As previously stated, Alaska follows the principle of dépeçage;[78] accordingly, the Court's choice of law analysis is separate from any prior choice of law analysis relating to other issues. It is well settled that "[i]n a diversity action the question of attorney's fees is governed by state law."[79] To determine which state's law—namely, whether Alaska or Pennsylvania law—controls, the Court "should apply the forum state's choice of law rules."[80]

Alaska follows the general approach outlined in the Restatement (Second) of Conflict of Laws, under which a forum state's own law may apply to procedural issues even when another state's law applies to substantive issues.[81] "Though federal law establishes that attorney's fees law

---

[76] Dkt. 76 at 7–8.

[77] *Id.* 76 at 8. Bernie's also asserts that the Motion for Attorneys' Fees is premature, as no judgment has been entered. *See id.* at 6–7.

[78] *Savage Arms, Inc.*, 18 P.3d at 53.

[79] *Seifert v. Eskimos, Inc.*, No. 3:13-CV-00080-TMB, 2015 WL 12516786, at *1 (D. Alaska Mar. 6, 2015) (quoting *Alaska Rent-A-Car*, 738 F.3d at 973).

[80] *Alaska Rent-A-Car*, 738 F.3d at 973. *See also CNA Ins. Co. v. Lightle*, 364 F. Supp. 2d 1068, 1072 (D. Alaska 2005).

[81] *Alaska Rent-A-Car*, 738 F.3d at 973.

14

is substantive for *Erie* purposes, it is not necessarily substantive for choice of law purposes."[82] Rather, "[w]hether it is substantive or procedural for choice of law purposes depends on how the Supreme Court of the forum state would characterize it."[83]

Under Ninth Circuit law, Alaska laws governing attorneys' fees are "procedural for choice of law purposes," and, "the law of the forum, Alaska, properly applies to diversity cases brought or removed to the United States District Court for the District of Alaska."[84] Alaska generally considers its rules governing attorneys' fees to be procedural, rather than substantive.[85] And, the Ninth Circuit has upheld the application of Alaska law to govern the award of attorneys' fees, even where another state's law governed other substantive provisions.[86] Thus, Alaska law controls as the law of the forum state.

ABDC argues that the choice of law provision found in the PVA alters this standard rule, and should instead govern, particularly given that the parties also included a fee-shifting provision in the PVA.[87] Under this theory, ABDC urges the Court to adopt the interpretation of "prevailing

---

[82] *Id*.

[83] *Id*. at 974.

[84] *Id*.

[85] *BP Pipelines (Alaska) Inc. v. State Dept. of* Revenue, 327 P.3d 185, 191 (Alaska 2014) ("We conclude that Rule 82 is a rule of procedure because it more readily falls on the procedure side of the substance and procedure divide under the definitions established by the precedents of this Court" (internal citation and quotation marks omitted)). Furthermore, the Court notes that Alaska's approach to attorney's fees is not only a strong public policy of the state, but unique. Indeed, "Alaska is the only state that follows the English rule that the prevailing party is generally entitled to an attorney's fees award[.]" *See Alaska Rent-A-Car*, 738 F.3d at 972 (internal punctuation omitted) (citing *Edwards v. Alaska Pulp Corp.*, 920 P.2d 751, 755 (Alaska 1996)).

[86] *Alaska Rent-A-Car*, 738 F.3d at 974–75.

[87] Dkt. 76 at 3.

15

party" found in Pennsylvania law, under which they assert that Bernie's would recover no fees.[88] The Court is unpersuaded by this argument: as discussed, the Ninth Circuit has held that Alaska law can apply to the issue of attorneys' fees for diversity cases brought in this district, even where another state's law is applied to substantive issues.[89] No Ninth Circuit authority distinguishes this holding for cases where a both a choice of law clause and a fee-shifting clause were found in the contract; to the contrary, case law cited by the Ninth Circuit involved precisely that circumstance and nonetheless applied the law of the forum state in interpreting the fee-shifting provision.[90] Accordingly, the Court finds that application of Alaska law to interpret the fee-shifting provision of the PVA is appropriate.

### 2. Whether the PVA or Alaska Rule 82 Governs the Award of Attorneys' Fees

Having determined that Alaska law properly applies to the issue of attorneys' fees, the next task for the Court is to determine whether, under Alaska law, the terms of the PVA should control, as Bernie's contends, or if the default provisions of Rule 82 should govern, as ABDC argues. Bernie's argues that, under the language of Section 11(b) of the PVA, they are entitled to "full reasonable attorneys' fees," arguing that the parties here have contracted out of the default partial

---

[88] *Id.*

[89] *Alaska Rent-A-Car*, 738 F.3d at 974.

[90] *See id.* at 973–74 n. 52 (citing *North Bergen Rex Transportation, Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848 (1999)). Moreover, in addition to the Ninth Circuit's binding precedent, this Court is guided by the Alaska Supreme Court's consistent approach to attorney's fees in the realm of choice of law, which treats attorney's fees separate from substantive portions of a contract, including the award of damages. *See, e.g.*, *Ehredt v. DeHavilland Aircraft Co. of Canada, Ltd.*, 705 P.2d 446, 452 n.8 (Alaska 1985) (stating that "attorney's fees are not an item of damage" and that Alaska law "would control an award of attorney's fees" even if damages were calculated under another state's law).

16

award amounts dictated by Alaska R. Civ. P. 82.[91] ABDC argues, in response, that, under Alaska law, Bernie's may only recover twenty percent of the reasonable attorneys' fees under Rule 82(b)(2), because Bernie's received no money judgment.[92]

The Court rejects ABDC's argument that Rule 82 displaces the language of the PVA. The language of Rule 82 provides that the amounts should be calculated under that Rule "[e]xcept as otherwise provided by law or agreed to by the parties."[93] "Alaska's Civil Rule 82 provides for partial fee-shifting in most civil cases absent any agreement between contracting parties."[94] Under Alaska law, "'where a contract between the parties allows for one party to recover attorney's fees in the event of litigation, the contract provision must prevail over any limitations otherwise imposed by Rule 82.'"[95] "When parties include a provision for attorney's fees in their contract, they draft that provision in the shadow of Rule 82," thus, Courts will "infer that the intent behind a contractual attorney's fees clause is therefore to provide for attorney's fees that are not otherwise provided by Rule 82."[96] The Court sees no reason to deviate from this approach in the instant matter. Accordingly, if Bernie's is found to be the prevailing party, Bernie's is entitled to recover

---

[91] Dkt. 75 at 9.

[92] Dkt. 76 at 7. In pertinent part, Rule 82(b)(2) reads, "In cases in which the prevailing party recovers no money judgment, the court shall award . . . the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred." Alaska R. Civ. P. 82(b)(2). Notably, both the PVA and Rule 82 use the term "prevailing party" to indicate the party that is entitled to attorney's fees.

[93] Alaska R. Civ. P. 82(a).

[94] *O'Connell v. Will*, 263 P.3d 41, 47 (Alaska 2011).

[95] *Id.* (quoting *Rockstad v. Erikson*, 113 P.2d 1215, 1224 (Alaska 2005)).

[96] *O'Connell*, 263 P.3d at 47.

all reasonable attorneys' fees relating to its prosecution of this matter, and is not limited to the lower percentage as Rule 82 would provide.

### 3. Whether Bernie's is the Prevailing Party Under the PVA

The final issue is whether, under the terms of the PVA, Bernie's is the prevailing party such that it is entitled to such an award. Section 11(b) of the PVA provides that "[t]he prevailing party in any legal action, including a bankruptcy action, may recover all reasonable attorneys' fees." Under Alaska law, "[t]he prevailing party is the one who succeeds on the main issue; it does not need to prevail on every issue or obtain 'formal judicial relief.'"[97] "When determining prevailing party status, [Alaska courts] have consistently looked to whether the party successfully prosecuted or defended the action and to whether the party prevailed on the main issue."[98]

The gravamen of the dispute between Bernie's and ABDC was whether ABDC acted within the scope of its authority under the PVA when it communicated to Bernie's its intention to terminate the supply of certain controlled substances.[99] In entering the preliminary injunction, and mandating that ABDC continue that supply as an obligation under the PVA, Bernie's prevailed on that central issue; that is, Bernie's successfully prosecuted its core position that ABDC's actions were outside the scope of ABDC's authority under the PVA.[100]

---

[97] *Smallwood v. Cent. Peninsula Gen. Hosp., Inc.*, 227 P.3d 457, 461 (Alaska 2010) (citing *Braun v. Borough*, 193 P.3d 719, 717 (Alaska 2008)).

[98] *City of Kenai v. Friends of Recreation Ctr., Inc.*, 129 P.3d 452, 460 (Alaska 2006).

[99] *See* Dkt. 51 at 2 ("The parties' dispute centers on the terms of the PVA and [ABDC's] decision to stop supply of certain prescription medications.").

[100] Moreover, while the Court did not make a final determination on this issue in entering the preliminary injunction, as it is not necessary under that standard, the Court's findings strongly indicated that, had ABDC acted in accordance with the course of conduct they proposed and actually terminated Bernie's supply of certain medications, that would have amounted to a material breach of the contract. *See id.* at 12–13 (finding that "[t]he term 'ordering restriction' does not, on its face, equate with the partial 'termination' which ABDC imposed" and stating that, "[a]lthough

18

ABDC contends that Bernie's is not the prevailing party under Alaska law because there was no breach, "Bernie's has not shown, nor could it, that it suffered any damages, that ABDC breached the covenant of good faith and fair dealing, or that ABDC tortuously interfered with Bernie's business relations," and argues that "Bernie's is unable to prevail on the merits on any of its claims or achieve most of the relief it sought in its Complaint."[101] This argument overlooks the basic fact that Bernie's achieved the primary purpose of its litigation: enforcing the PVA and preventing ABDC from terminating its supply obligations under that agreement.[102] Moreover, the fact that certain harms were avoided was due—at least in large part—to the preliminary injunction. The Court found that substantial harm would have occurred had ABDC terminated Bernie's supply.[103] The fact that the claims were subsequently mooted by the expiration of the PVA does not change the fact that Bernie's was successful in litigating its position regarding the obligations under that contract, and thus on the main issue of the case.[104]

---

the Court need not definitively interpret [the relevant provision of the PVA] at this stage, the Court concludes that [the PVA] does not clearly provide a basis for ABDC's action, and that Plaintiff has shown a likelihood of success on their breach of contract claim.").

[101] Dkt. 76 at 7.

[102] *See* Dkt. 1 at 11, 14–15, 15. In fact, ABDC previously argued that two claims it now points to as evidence that Bernie's did not succeed—breach of the implied covenant of good faith and tortious interference—were insufficiently distinct from the contractual dispute to constitute separate claims. *See, e.g.*, Dkt. 20 at 26 ("Here, [Bernie's] allegations plainly sound in contract"); Dkt. 62 at 9–10. Given this, the Court finds little merit in ABDC's argument that a lack of resolution on the merits of those claims precludes a finding that Bernie's succeeded on the "main issue" of the case. Indeed, that result would penalize Bernie's for the common practice of advancing more than one legal theory stemming from a single set of facts.

[103] *See* Dkt. 51 at 13–14; *id.* at 16 ("Bernie's has demonstrated that ABDC's termination of supply of controlled substances would likely drive Bernie's out of business, and at a minimum, would damage Bernie's reputation as Bernie's had to turn away numerous patients.").

[104] Although the Court applied Alaska law in arriving at this result, the Court briefly addresses the position taken by ABDC that under Pennsylvania law, Bernie's could not be considered the prevailing party. *See* Dkt. 76 at 5. The Court is not persuaded that this result is certain. "The

19

Accordingly, Bernie's is the prevailing party, and is therefore entitled to all reasonable attorneys' fees as provided for in the PVA.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The Motion to Dismiss at docket 62 is **GRANTED**, and all claims are **DISMISSED AS MOOT** pursuant to Fed. R. Civ. P. 12(b)(1);

2. The Motion for Attorneys' Fees at docket 75 is **GRANTED**; and

   a. In conformance with Fed. R. Civ. P. 54(d)(2) and D.Ak. L. R. 54.2, Bernie's is directed to file, within thirty (30) days of the date of this Order, the amount of reasonable attorneys' fees requested, along with a declaration or affidavit that conforms with D.Ak. L. R. 54.2(d) and includes an itemized billing records to support that request; and

   b. ABDC shall file its response, if any, to Bernie's filing within fourteen (14) days of the date of Bernie's filing, detailing any specific objections to the attorneys' fees claimed by Bernie's. The Court shall then issue a subsequent order.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 1st day of May, 2019.

/s/*Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

Pennsylvania Supreme Court has not specifically addressed the interpretation of the term 'prevail' in a contractual fee-shifting clause." *Zambelli Fireworks Mfg. Co. v. Wood*, No. 2:08-CV-415, 2010 WL 4672357, at *9 (W.D. Pa. Nov. 9, 2010). The cases ABDC cited are distinguishable: *Zavatchen v. RHF Holdings, Inc.* involved the interpretation of the term "substantially prevailing" under Pennsylvania's Contractor and Subcontractor Payment Act. *See* 907 A.2d 607, 610–11 (Pa. Super. 2006). And, in *Zambelli*, the preliminary injunction at issue "represented a middle ground" wherein the Court made findings both for and against both parties; in fact, the party against whom the preliminary injunction was entered later succeeded on numerous claims on summary judgment. *See* 2010 WL 2672357, at *9-10. Thus, the *Zambelli* court stated that "there was no clear cut winner" and declined to award attorney's fees. *Id.* (internal punctuation omitted).